UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHELE L. WILLIAMS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>　　　　Defendants. | No. 04-CV-0468-AAM<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross motions for Summary Judgment. (Ct. Rec. 13, 15). Attorney Maureen Rosette represents the Plaintiff; Assistant United States Attorney Pamela Derusha and Special Assistant United States Attorney Stephanie Martz represent the Defendant. After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

## I.    JURISDICTION

Michele L. Williams (Plaintiff) protectively filed for Disability Insurance Benefits and Supplemental Security Income on June 10, 2002. (Tr. 86, 478.) She alleged disability due to severe depression, bipolar disorder, anxiety attacks, major mood swings, long term fatigue, no concentration, tremors, and sleep disorder, with an onset date of January 27, 2001. (Tr. 105, 474.)

ORDER DENYING PLAINTIFF'S
FOR SUMMARY JUDGMENT - 1

Her application was denied initially and upon reconsideration. (Tr. 43, 49.) She timely requested a hearing before an administrative law judge (ALJ), which was held on November 4, 2002. (Tr. 52, 562.) ALJ R. J. Payne denied her application and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 6-9.) The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

## II.  SEQUENTIAL EVALUATION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner is governed by a five-step sequential evaluation process for determining whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520, 416.920. In steps one through four, a claimant must demonstrate a severe impairment and an inability to perform past work. *Erickson v. Shalala,* 9 F.3d 813, 816-17 (1993). If a claimant meets those requirements, the burden shifts to the Commissioner to demonstrate a claimant can engage in other types of substantial gainful work which exist in the national economy. *Id.* at 817 *(citing Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984)). To make this determination, the Commissioner must consider a claimant's age, education and work experience. 20 C.F.R. § 404.1520(f). *See Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287 (1987).

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

## III.   STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## IV.   STATEMENT OF THE CASE

Plaintiff was 37 years old at the time of the ALJ hearing. (Tr. 592.) She dropped out of school in the eighth grade, but completed her GED. (Tr. 578.) She has worked as a pawn broker, bus driver, survey interviewer, product demonstrator, flagger/pilot car driver, retail clerk and cashier. (Tr. 140, 599-600.) She also raced stock cars and roller skated competitively. (Tr. 569, 587.) For one month, she was employed by her sister as an escort car driver. (Tr. 588.) Plaintiff is a single mother of two young daughters with whom she lives alone. (Tr. 576.) Her mother lives in town and helps with the children

and housework. She also has two sisters who help her. (Tr. 596.) For transportation, Plaintiff depends upon her mother or the transit system. (Tr. 598.) Her driver's license was suspended for failure to pay fines. (Tr. 578.) At the time of the hearing, she had a protective payee. (Id.) Plaintiff testified that anxiety and depression were the primary medical problems that prevented her from working. (Tr. 579-80.) She testified that she slept most of the day when not caring for her children. She also watches television and reads, but stated she had few friends and no social activities. (Tr. 588-89, 591.) She was taking medication for her anxiety and depression which she testified gave her chest pains and caused extreme weight gain. (Tr. 467, 581.) She testified she could not lift more than ten pounds and had problems sitting and walking. (Tr. 582-83.)

### V.  ADMINISTRATIVE DECISION

ALJ Payne applied the five-step sequential evaluation process for determining whether Plaintiff is disabled. At step one, he found she had not engaged in substantial gainful activity since 2001; at step two he found she had the severe impairments of affective disorder (including major depression, major depressive disorder, an adjustment disorder with anxiety and depressive features, a mood disorder and bipolar disorder by history). He also found she had an anxiety disorder and personality disorder. (Tr. 30.) At step three, he found the impairments did not meet or equal the requirements of a listed impairment. At step four, he determined she had no exertional limitations and retained the functional capacity for a wide range of heavy, medium, light and sedentary level work. (Tr. 30-31.) As for Plaintiff's mental

residual functional capacity, the ALJ found she had some "moderate" functional limitations, but maintained an intact memory and the ability to understand and follow instructions and procedures. She could attend and persist on task, and her anxiety "was likely to diminish concentration on more complex/detailed tasks." (Tr. 31.) She would have difficulty tracking an irregular work schedule, but was able to sustain a regular work schedule and routine commute. He found despite her mental impairments, she could carry on superficial social interactions appropriately and had adequate intelligence to adjust to change, but due to her emotional lability, she may have difficulty responding to conflict with others and structuring her own efforts. (Id.) Based on the vocational guidelines and testimony from vocational expert Tom Moreland, the ALJ found Plaintiff was able to perform her past relevant work of escort driver. (Tr. 605, 31.) The ALJ proceeded to step five and found Plaintiff could also perform a wide range of medium, light, and sedentary work in national economy. Specifically, he found she could work as an electronic assembler, laundry worker, agriculture sorter, kitchen helper, warehouse worker, document preparer, assembler and clip loading machine feeder. (Tr. 31-32.) He concluded Plaintiff had not been "disabled," as defined in the Social Security Act, at any time through the date of his decision.

### VI. ISSUES

The question presented is whether the ALJ's decision is supported by substantial evidence and is free of legal error. Plaintiff contends that the ALJ erred when he: (1) improperly relied on the opinion of a non-examining psychologist over the

opinions of medical providers who treated and examined her, and (2) improperly rejected the opinions of her treating and examining mental health providers. (Ct. Rec. 14, p. 11-12). Plaintiff further contends that post-hearing treatment records and a psychological evaluation by Dennis Pollack, Ph.D., should be considered in the court's review. She argues that the new evidence constitutes a basis for reversal or remand of the ALJ's decision. (Ct. Rec. 14, p. 14-15).

## VII.  DISCUSSION

A. <u>Evaluation of Medical Evidence</u>

In a disability proceeding, a treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (*quoting Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If a treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605. To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his or her interpretation of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947,

957 (9th Cir. 2002) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Historically, courts have recognized internal inconsistencies, conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding an examining physician's opinion.  *Thomas,* 278 F. 3d at 957; *see also Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 605.  Further, the more consistent an opinion is with the record as a whole, the more weight is given to that opinion.  20 C.F.R. § 404.1527(d)(4). The ALJ does not need to accept the opinion of any medical source if it is conclusory, brief or unsupported by findings.  *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Although deference is given to a treating physician's opinion, the determination of whether an impairment meets or equals a listing and the ultimate determination of disability are findings reserved solely for the Commissioner.  *Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001); *SSR 96-5p*.

Here, the ALJ summarized medical evidence from Dr. Bostwick and the agency psychologists who reviewed Plaintiff's medical records.  (Tr. 25-27.)  He also summarized generally the mental health records from Family Service Spokane and Spokane Mental Health, where Plaintiff received counseling and medication management services from Karen Johnson, M.S., Karen Bick, M.S. and Terry Patterson, ARNP.  (Tr. 25.)  He interpreted the mental health records as indicating Plaintiff's problems were situational and related primarily to financial stressors.  (Id.)  He noted

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

that both Dr. Bostwick and Plaintiff's mental health counselors reported that Plaintiff's symptoms were significantly improved with medication. (Id.)  Plaintiff argues that the summary and interpretation are not adequate to reject the opinions of treatment providers that her symptoms are more severe than found by the ALJ.  Specifically, she asserts the opinions of Ms. Patterson and Ms. Bick should have been given more weight than the non-examining psychologist upon whom the ALJ relied.  (Ct. Rec. 14, p. 11).

 Regarding Dr. Bostwick's assessment, the ALJ properly found that in February 2001, Dr. Bostwick opined that Plaintiff's mental disorders were due to situational stressors, that she would respond to medication, and her symptoms were unlikely to persist more than one month.  (Tr. 25-26, 251.)  As discussed below, the evidence shows that Plaintiff's condition improved with medication and counseling at FSS, and her file was closed by August 2001.  (Tr. 281.)  The record indicates she did not return for mental health counseling until April 2002.  (Tr. 285, 362, 368.)  Thus, the ALJ's findings are consistent with Dr. Bostwick's opinions.

 Regarding Ms. Patterson and Ms. Bick, the Regulations provide that mental health practitioners, such Ms. Johnson and Ms. Bick, are not acceptable medical sources to establish an impairment.  20 C.F.R. § 404.1513(a).  However, mental health therapists and nurse practitioners are "other sources" who may provide evidence of the effects of an impairment on a claimant's ability to work.  20 C.F.R. §§ 1513(d)(1), 404.1529(c)(3).  Although the Regulations do not provide specific guidelines for weighing the opinions of "other sources," generally, greater weight is given to an

acceptable medical source, but "other source" opinions may not be disregarded without the ALJ giving reasons that are germane to that witness. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *see also Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993).

Both Ms. Johnson and Ms. Bick had ongoing contact with Plaintiff, and their opinions regarding Plaintiff's limitations were considered by the ALJ in his determinations. The ALJ specifically stated that the diagnoses assessed by Ms. Bick and Ms. Johns were milder than those of the consulting and examining psychologists. (Tr. 25.) He also stated that their treatment records indicate her mental health problems were situational, and she did not suffer significant mental dysfunction from these problems. (Id.) Those findings by the ALJ are supported by the record.

Plaintiff saw Ms. Johnson from Family Service Spokane (FSS) off and on from 1998 until 2002. In 1999, when Plaintiff began counseling, Ms. Johnson noted Plaintiff suffered from depression and anxiety due to childhood issues, a troubled relationship with the father of her one child, and the death of her ex-husband. After stabilizing on medication, Plaintiff was discharged. (Tr. 188-91.) In 2000, when Plaintiff resumed counseling, she had two daughters, and many situational stressors, including relationship problems, work, a threatened foreclosure on her house, and a new baby. (Tr. 221-22, 228, 230.) By January 2001, she had lost her job, but reported enjoying the time with her children. She was planning on returning to work (Tr. 243.) By February 2001, she was stabilized on medication and feeling good. (Tr. 268, 270.) In April 2001, Plaintiff reported her father was dying of cancer,

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

the father of her daughters had taken the children and not returned them, she had filed for a temporary restraining order and had spent time in jail for violating the order. (Tr. 273-78.) Ms. Johnson noted Plaintiff was "remarkably stable" in spite of these intense situational stressors. (Tr. 278.) Plaintiff's file was closed in August 2001 because she had a new boy friend, felt good and reported she no longer needed medication. (Tr. 281.) Plaintiff returned to FSS in April 2002, but was discharged for lack of contact. (Tr. 285-86.)

Medical records indicate Plaintiff began counseling sessions with Ms. Bick at SMH in May 2002.[1] (Tr. 368.) Plaintiff complained of panic attacks and depression, for which she was taking medication. Her house was in foreclosure, her water had been turned off, and her boyfriend had left. She was in the process of moving. By August 2002, Plaintiff reported housing was no longer a problem, and Ms. Bick observed Plaintiff was doing much better. (Tr. 372.) In October 2002, when Ms. Bick completed a psychiatric evaluation form, she noted marked and severe limitations, but indicated she did not expect impairments to last longer than 12 months. (Tr. 451-52.) In his summary of the evidence, the ALJ noted correctly that the limitations indicated by Ms. Bick did not meet the durational requirement for a disability. (Tr. 26.) *See* 20 C.F.R. § 404.1505 (a)(impairment must last or be expected to last for a continuous period of not

---

[1] In December 2000, Minerva Arrienda, M.D. from SMH was providing medication management. She noted Plaintiff was able to work and care for her children once she was treated with Depakote for depression. (Tr. 170.)

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 10

less than twelve months). Further, the ALJ specifically rejected the DSHS evaluations by Ms. Patterson and Ms. Bick, stating that they were completed to assist Plaintiff with housing assistance, and were not supported by the medical evidence.[2] (Id.) These reasons are germane to the therapists' motivation to obtain services for Plaintiff and the ALJ's interpretation of the evidence is supported by the record in its entirety. As discussed above, Plaintiff's treatment records do not reflect significant mental health difficulties of sufficient duration to be considered disabling under the Social Security Regulations. The evidence is adequate to support the ALJ's articulated reasons for the weight given to the opinions of Ms. Bick and Ms. Patterson regarding the severity of Plaintiff's limitations. *See Tackett*, 180 F.3d at 1097.

The ALJ also considered reports from agency psychologists in his determination that the record did not support marked and severe levels of limitation. (Tr. 26-27, 266, 355-57, 408.) Consulting or reviewing psychologists, such as Drs. Kester, Underwood and Gardner, are experts in the Social Security disability programs, and the ALJ must consider their findings of facts about the nature and severity of an individual's impairments as opinions of non-examining psychologists. 20 C.F.R. §§

---

[2] Ms. Patterson also completed a psychiatric assessment in September 2002. (Tr. 429-31.) As revealed during the hearing, Ms. Patterson's report has many discrepancies regarding Plaintiff's history and family background, suggesting that Ms. Patterson was confusing Plaintiff with another patient and casting doubt on the report's reliability. (Tr. 491, 571.) It is reasonable that this assessment was given little, if any, weight by the ALJ.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 11

404.1527(f) and 416.927(f).  Further, in making residual functional capacity (RFC) findings, the ALJ must consider and evaluate any assessment of a claimant's RFC by a state agency psychological consultant or program psychologist.  An ALJ must explain the weight given to these opinions, which can be given weight "only insofar as they are supported by the evidence in the court record."  *SSR 96-6p*.  ALJ Payne adopted the RFC of Dr. Gardner from September 23, 2002. (Tr. 28, 408.)  This was reasonable in light of the fact that Dr. Gardner based his findings on a review of Plaintiff's entire record.  His narrative adequately explains his findings.  He noted that although Plaintiff had many situational stressors, her memory and concentration were intact.   (Tr. 408.)  This is consistent with the psychological evaluations from Dr. Kester in April 2001, (Tr. 266), Dr. Underwood in August 2002, (Tr. 355, 357), and Plaintiff's counseling records.  The acceptable medical sources concluded Plaintiff had mild to moderate levels of limitations, responded to medication and continued to function adequately, taking care of her children, herself and her home environment. (Tr. 266, 357, 431.)  The ALJ further found that these conclusions were verified at the hearing by Plaintiff, who testified that she was able to take care of her own activities of daily living, shop, do laundry, cook, take parenting classes and take care of her children. [3]  (Tr. 27, 589-90.) The ALJ did not err in his

---

[3] The court notes that while the ALJ did not make a specific credibility finding in the <u>Findings</u> section of his decision, he made findings discounting portions of Plaintiff's testimony for clear and convincing reasons.  (Tr. 27); *see Reddick*, 157 F.3d at 722.  Those findings have not been challenged.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

1  evaluation of the medical evidence or in his reliance on the
2  opinions of non-examining, acceptable medical sources.
3      B.   New Evidence
4      On August 16, 2004, subsequent to the ALJ hearing and
5  decision, Plaintiff was evaluated by Dennis Pollack, Ph. D.  (Tr.
6  551-57.)  The Appeals Council considered the new evidence and
7  found that the information did not provide a basis for changing
8  the ALJ's decision.  (Tr. 6.)  Plaintiff argues Dr. Pollack's
9  findings reflect impairments more severe than those found by the
10 ALJ.  (Ct. Rec. 14, p. 14).   She contends this evidence merits a
11 remand to the ALJ for further proceedings.  (Id.).
12      In this circuit, when the Appeals Council specifically
13 considers new evidence in the context of denying the claimant's
14 request for review, the reviewing court considers the rulings of
15 both the ALJ and the Appeals Council, and the record includes the
16 ALJ's decision as well as the new evidence.  *Gomez*, 74 F.3d at
17 971;  *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  When
18 considering new evidence as a basis for remand, the reviewing
19 court must determine if the evidence is material and there is good
20 cause for the late submission.  42 U.S.C. § 405(g); *see also Mayes
21 v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); *Bruton v.
22 Massanari*, 268 F.3d 824, 827 (9th Cir. 1984) (new evidence is
23 material if it "bears directly and substantially on the matter in
24 dispute;" and "there is a reasonable possibility" it would change
25 the outcome of the ALJ's decision).  Based on this standard, the
26 court declines to remand.
27      The new evidence presented does not differ significantly from
28 evidence in the record before the ALJ.  Treatment notes do not

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13

indicate a significant worsening of symptoms.  Ms. Patterson noted in October and November 2003, that Plaintiff was stable on her medications, showed no disturbance of mood and was no longer depressed.  (Tr. 491-92.)  Plaintiff's attendance at counseling was sporadic, and mental health problems were due to situational stressors, such as relationship issues and/or failure to take her medication.  (Tr. 494-95, 497, 499.)  When Dr. Pollack evaluated her in August 2004, ten months after the ALJ denied benefits, Plaintiff exhibited no unusual anxiety symptoms, there was no indication of hallucinations or delusions and her thinking was logical and progressive.  (Tr. 551.)  Dr. Pollack reported Plaintiff's objective test scores indicated that she was most likely exaggerating her difficulties.  (Tr. 555.)  He opined her test scores and presentation suggested a personality disorder with mixed features.  (Tr. 557.)

   Contrary to Plaintiff's argument, Dr. Pollack found Plaintiff had "no limitations" in the majority of her functions. (Tr. 558-59.)  He found a "marked limitation" in her ability to "perform activities within a schedule, maintain a regular schedule and be punctual," and in her ability to "complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Tr. 559.)  This appears to contradict his findings that Plaintiff had "no significant limitation" in her ability to maintain attention and concentration for extended periods and "no limitation" in her ability to sustain an ordinary routine without special supervision.  (Id.)  There is no explanation for this apparent contradiction, and Dr. Pollack's

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

narrative intimates the possibility of exaggeration by the Plaintiff.  Consequently, the new evidence is inconclusive and does not establish a reasonable possibility that the opinions therein would change the outcome of the ALJ's determination. Therefore, remand is not warranted.  Accordingly,

**IT IS ORDERED:**

    1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **DENIED.**

    2. Defendant's Motion for Summary Judgment (**Ct. Rec. 15**) is **GRANTED.**

    3. Judgment for the **DEFENDANT** shall be entered. The District Court Executive is directed to enter this Order, forward copies to counsel, and close this file.

    **DATED** this 21st  day of November 2005.


                                                    s/ Alan A. McDonald  
                                                     ALAN A.   McDONALD  
                             SENIOR UNITED STATES DISTRICT JUDGE